UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| FAIR HOUSING CENTER OF | ) | |
|---|---|---|
| SOUTHWEST MICHIGAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09-cv-593 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| JOSEPH M. HUNT, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | |
| | ) | |

This is a civil action alleging housing discrimination in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, the Civil Rights Act, 42 U.S.C. §§ 1982-1996b, and the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS §§ 37.2501-.2507. Plaintiffs Kenneth and Theresa Miller allege that defendants discriminated against them on the basis of familial status, age, and race. Plaintiff Fair Housing Center of Southwest Michigan challenges certain of defendants' rental practices as having a discriminatory impact on the basis of race. Plaintiffs also challenge certain advertisements under section 3604(c) of the Fair Housing Act and analogous provisions of the Elliott-Larsen Act.

On January 10, 2011, plaintiffs moved *in limine* to exclude the testimony of defendants' named expert witness, Sharon M. Filas, in its entirety. (docket # 140). In response to the motion, defendants submitted an amended Rule 26(a)(2) report from Ms. Filas, which eliminated or modified some of the opinions stated in the first report. (docket # 150-1). In reply, plaintiffs

continued to object to certain of the opinions and conclusions set forth by Ms. Filas. In essence, plaintiffs argue that the challenged opinions lack empirical support and should be excluded under Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1973), and its progeny.

Chief Judge Paul Maloney has referred this matter to me for decision pursuant to 28 U.S.C. § 636(b)(1)(A). I conducted a hearing on the motion on February 16, 2011, and issued a brief oral opinion. This memorandum opinion summarizes and expands on the oral opinion issued in open court. For the reasons set forth below, plaintiffs' motion will be granted in part and denied in part.

**Summary of Amended Expert Witness Report**

The subject matter of this lawsuit concerns rental practices at Clayborne Court Apartments in Kalamazoo, Michigan. The apartment complex has 140 rental units. Ninety-six of the units contain one bedroom, thirty-four are studio apartments, and only ten have two bedrooms. Plaintiffs Kenneth and Theresa Miller were tenants at this complex in the year 2005 (two-bedroom apartment) and from September 1, 2006 through October 2008 (one-bedroom apartment). Their tenancy was not renewed at the end of the 2008 term. The Millers allege disparate treatment on account of their age, race, and familial status. Plaintiff Fair Housing Center (which sent in "testers" to the apartment complex after the Millers lodged a complaint) alleges a claim of disparate impact on account of race, as well as challenging the legality of certain notices and advertisements used by the complex.

To rebut the claims of disparate treatment and disparate impact alleged by plaintiffs, defendants propose to present the testimony of Sharon M. Filas, C.P.A. Ms. Filas is a certified public account and specializes in computation of economic damages (including lost profits and recovery for business interruption) as well as forensic fraud investigation. Beyond her C.P.A. certification, Ms. Filas has specialized education in insurance underwriting and claims handling. According to her deposition, she has specialized expertise in amassing and analyzing data. Ms. Filas has no specialized education, training, or background in housing discrimination, rental practices or the habits and preferences of renters in choosing apartments. Her testimony and conclusions are summarized in an amended report, as required by Fed. R. Civ. P. 26(a)(2).

The principal data collection and analysis performed by Ms. Filas involved retrieving information from the U.S. Census Bureau's American Community Survey for the years 2006 through 2008 with regard to demographics in the Kalamazoo area. Ms. Filas compared this information to information provided to her by defendants concerning the demographics of people who lived in the apartment complex. In addition to comparing demographic information, Ms. Filas ventured certain opinions, such as the following: In light of the comparison of tenants over age 55 at the apartment building to demographics in the City of Kalamazoo, "there is no evidence to support the claim that Clayborne Court's rental practices resulted in a disparate impact to individuals who are under age 55." (Am. Rpt. at 6).

Additionally, Ms. Filas presents a number of explanations as to why the tenant population at the complex exhibits its present characteristics. In doing so, Ms. Filas opines as to the rental preferences of certain members of the population. For example, she asserts that it is reasonable to have a significantly higher percentage of renters over age 55 at the complex because

ninety percent of the units had one bedroom or less. (Am. Rpt. at 6). She further asserts that the low number of families present in the complex may be explained by the fact that the complex does not have a pool, clubhouse, fitness center, playgrounds, or tennis courts and that families are drawn to these types of amenities. (*Id.* at 7). Although noting that the seven percent occupancy rate for black renters is lower than the sixteen percent rate of black persons in the community, she pronounces this disparity "reasonable" because black individuals are likely to have more people in their household and because black families are less able to afford the higher rent charged in the complex. (*Id.* at 7-8).

## Discussion

The trial court performs a "gatekeeping" function under the Federal Rules of Evidence with regard to proffered expert testimony. The court must determine whether the proffered evidence is relevant and reliable. *See Daubert*, 509 U.S. at 589. In *Daubert*, the Court held that the standard for admissibility of scientific expert testimony was that set forth in Rule 702 of the Federal Rules of Evidence. 509 U.S. at 588-92. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court held that the gatekeeping function under Rule 702 applies to all expert testimony, regardless of the basis of the expert's knowledge. The court observed that the object of the gatekeeping function is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. at 152. Thus, regardless of the type of expert testimony at issue, the court must insure that the testimony is both "reliable and relevant." *Id.* at 149. A district court's decision to admit or exclude expert testimony is reviewed under an abuse-of-discretion standard. *United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011).

Rule 702 of the Federal Rules of Evidence was amended in 2000 to embody the principles enunciated in *Daubert* and *Kumho*. The rule now provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. Applying these principles, I find that certain of the proffered opinions of Ms. Filas must be excluded, as they are not the product of "reliable principles and methods."

Data Compilation. The principal effort undertaken by Ms. Filas was the compilation of housing data pertaining to the Kalamazoo market as a whole and comparison of that data to the tenant population at the apartment complex. Such statistical evidence is commonplace in Fair Housing Act litigation. In fact, the Sixth Circuit has held that a plaintiff seeking to establish a claim on a disparate impact theory bears the burden of "offering statistical evidence of a kind or a degree sufficient to show that the practice in question has caused the adverse effecting question." *GRAOCH Assoc. #33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n*, 508 F.3d 366, 374 (6th Cir. 2007). As is shown by the *GRAOCH* case itself, comparisons of demographics within the relevant market area to the population housed in a particular apartment complex is deemed relevant to establishing or refuting a disparate impact claim. *See id.* at 378. Furthermore, as conceded by plaintiffs' counsel at the hearing, such statistical analysis can also provide circumstantial evidence to support or refute a report of disparate treatment. *See, e.g., Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) (statistical evidence admissible in disparate treatment case); *accord Felder v. Nortel*

*Network Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006) (same). Plaintiff has not challenged the validity of the census data extracted and compiled by Ms. Filas. Publications of the U.S. Bureau of Census are self-authenticating, FED. R. EVID. 902(5), and would be independently admissible in a civil action under the public records exception to the hearsay rule, FED. R. EVID. 803(8). Plaintiffs have not seriously challenged the reliability or accuracy of the data provided to Ms. Filas by defendants for comparison purposes. To the extent that plaintiffs find fault with the demographic data relating to the apartment complex, they are free to raise this challenge by cross-examination or by introduction of contrary evidence. *See Daubert*, 509 U.S. at 596 ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

I find no reason to exclude any of the data compiled by Ms. Filas, as it is both relevant and reliable. Furthermore, although defendants could theoretically have presented this evidence in another way, the compilation and presentation of statistical evidence by an expert witness in a comprehensive and coherent manner will "assist the trier of fact to understand the evidence." FED R. EVID. 702.

Conclusions and Opinions Concerning the Significance of the Statistical Evidence. Several of the opinions proffered by Ms. Filas relate to the meaning of the statistical evidence in the context of this case. For example, Ms. Filas opines as follows: "Based upon my review of the documents provided to me and my independent research, it is my opinion that the demographics of the tenants of Clayborne Court Apartments are not significantly different from the demographics of the population of the City of Kalamazoo." (Am. Rpt. at 3). Opinions of this nature are only one step

removed from the underlying data and are well within the scope of the witness's training and experience, which involves the compilation and analysis of complicated data. Cross-examination and the presentation of contrary evidence should be sufficient to demonstrate any flaw in the witness's analysis.

Other conclusory opinions, however, go beyond the witness's expertise. For example, Ms. Filas opines that "there is no evidence to support the claim that Clayborne Court's rental practices resulted in a disparate impact to individuals who are under 55." (Am. Rpt. at 6). It is one thing for the witness to say that the statistical evidence points in one direction or another. It is another for her to say that in her opinion there is "no evidence" to support plaintiffs' claims. The conclusions of an expert witness must find their foundation in the witness's "knowledge, skill, experience, training, or education." FED. R. EVID. 702. The degree of such knowledge, experience, or education must be sufficient to ensure that the witness's testimony will assist the trier of fact. *See Sigler v. American Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). There is nothing in Ms. Filas's education, experience, or expertise that would allow her to analyze all the evidence in this matter and express an opinion as to the strength of plaintiffs' claims. She has no background in housing discrimination law or in any other discipline that would allow her to evaluate the strength of the evidence in this case. Her conclusions must be limited to the impact of the statistical and demographic evidence that she has compiled.

Opinions Concerning Habits and Preferences of Renters. Much of Ms. Filas's testimony is devoted to explaining the demographics exhibited at the Clayborne Court Apartments. For example, she opines that it is reasonable to expect a higher percentage or renters to be over the

age of 55 at the complex, because over ninety percent of the units had one bedroom or less. (Am. Rpt. at 6). Further, she attempts to explain away the fact that only one tenant at the complex had children by pointing out that the complex has only ten two-bedroom apartments and that families would be looking for two or more bedrooms. (Filas Dep. at 115-16, 120-24). Further, she points to the complex's lack of a pool, clubhouse, playground, or like amenities to explain the small number of families living in the complex.

The problem with this testimony is that it is not "the product of reliable principles and methods" as required by Rule 702. In advancing these opinions, Ms. Filas took on the role of a type of social scientist who is familiar with the housing preferences and patterns of the aged, families, and minorities. The requirements of *Daubert* are applicable to such social science testimony. *See Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (Fair Housing Act case). "Social science testimony, like other expert testimony proffered under Fed. R. Evid. 104(a) for admission under Rule 702, must be tested to be sure that the person possesses genuine expertise in the field and that her court testimony 'adhere[s] to the same standards of intellectual rigor that are demanded in [her] professional work.'" *Id.* (quoting *Braun v. Lorillard Inc.*, 84 F.3d 230, 234 (7th Cir. 1996)); *see Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 177 (6th Cir. 2009). Genuine expertise may be based on either experience or training, but the district court must insure that "it is dealing with an expert, not just a hired gun." *Tyus*, 102 F.3d at 263.

Ms. Filas possesses no experience or education in the housing area. Even more basically, she has not articulated any reliable "principles and methods" supporting her conclusions. When pressed during her deposition, Ms. Filas explained that her observations were based on "common sense" or "gut reaction." (*See, e.g.,* Filas Dep. at 94-95, 136, 142). Ms. Filas was unable

to cite any test studies or other empirical information to support her conclusions. Presumably, expert witnesses do exist who could offer an opinion on the housing preferences of minorities, families, and the elderly or would be able to tie housing preferences to family income. Such conclusions might be grounded in empirical research, personal observation, surveys, or scholarly study. Ms. Filas, however, had no such foundation for her opinions, and it is highly doubtful that her training and experience would allow her to draw such conclusions in any event.

In the case of scientific testimony, the court may base a judgment concerning reliability on factors such as (1) whether the theory or methodology has been or can be tested, (2) whether it has been subjected to peer review, (3) whether it has a known or potential rate of error, and (4) whether it has been generally accepted within the scientific community. *Daubert*, 509 U.S. at 593-94. In fields outside the hard sciences, the court may look to other measures of reliability. In judging any type of expert testimony, however, the court must exclude testimony that is merely "personal belief or opinion." *See Turpin v. Merrill Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992). The word "knowledge connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010).

The trial court's focus must be solely on the "principles and methodology" employed by the expert, not on the ultimate conclusions that they generate. *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). In the present case, when one searches for the "principles and methodology" underlying the conclusions of Ms. Filas concerning the habits and practices of apartment renters, it becomes obvious that there is no empirical basis for them. The trial court's gatekeeping role requires exclusion of such unsupported opinions.

## **Conclusion**

For the foregoing reasons, plaintiffs' motion *in limine* (docket # 140) will be granted in part and denied in part. The data compiled by Ms. Filas, her comparison of area demographics to the renter population at the apartment complex, and her opinions whether those statistics support or undermine a claim of disparate impact or disparate treatment are properly admissible. The witness's conclusions about the overall strength of plaintiffs' case or whether plaintiffs' claims are supported by "any evidence" are inadmissible. Similarly, the witness's opinions concerning the "reasonableness" of the tenant population exhibited at Clayborne Court Apartments and the practices and preferences of various renter groups are similarly inadmissible.


Dated: February 23, 2011                    /s/  Joseph G. Scoville
                                            United States Magistrate Judge